IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE QUADREL, NICHOLAS STEFANOU, SCOTT TULL, DAVID ADAMS and CHRIS GREGORY, on behalf of themselves and those similarly situated,<br>    Plaintiffs,<br><br>    v.<br><br>GNC FRANCHISING, L.L.C.<br>    Defendant. | Civil Action No. 06-643 |

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                                                                  December 18, 2006

    This is a putative class action alleging breach of a prior class action settlement agreement and tortious interference with contractual relations. Named plaintiffs, Leslie Quadrel, Nicholas Stefanou, Scott Tull, David Adams and Chris Gregory are franchisees of defendant GNC Franchising, L.L.C.[1] In Counts I and II plaintiffs allege that defendant has violated a class action settlement agreement entered into in <u>Duarte, et al v. GNC Franchising Inc</u>, Civil Action No. 00-332 (W.D. Pa. 2000) ("2001 Agreement"). Plaintiffs also allege in Count III that defendant's conduct with regard to third party vendors

---

    [1]    At their request, named plaintiffs David Adams and Chris Gregory were dismissed from this action, without prejudice, by this court's order dated 11/20/06.

constitutes tortious interference with contractual relations. Plaintiffs seek declaratory judgment, injunctive relief and money damages on behalf of the putative class.

Plaintiffs Quadrel and Stefanou were franchisees at the time of the 2001 Agreement and were members of that class. (hereinafter referred to as "Class 1" plaintiffs) Plaintiff Tull was a member of the class but decided to opt out of the settlement. (hereinafter referred to as "Class 2" plaintiffs) Plaintiff Gregory was not a GNC franchisee at the time of the 2000 settlement. (hereinafter referred to as "Class 3" plaintiffs).[2] Defendant has filed a motion to dismiss the amended complaint. Defendant argues that: (1) Class 2 plaintiffs, specifically, plaintiff Tull, and the class he purports to represent, lack standing to pursue claims for violation of the 2001 settlement agreement in Counts I and II because they opted out; (2) "Class 1" plaintiffs, namely, plaintiffs Quadrel and Stefanou, and the class they purport to represent, have failed to state a claim for violation of the 2001 Agreement in Counts I and II; and (3) all plaintiffs have

---

[2] As previously noted, plaintiff Gregory, the only representative of "Class 3" was dismissed without prejudice. Accordingly, the claims of the class he purported to represent must also be dismissed, without prejudice.

failed to state a claim for tortious interference with contractual relations in Count III. For the reasons set forth below, the motion is granted in part and denied in part.

I.      BACKGROUND

In 1999, franchisees of GNC filed a class action complaint against defendant in the Superior Court of the State of California. Amended Compl. ¶¶ 11-12. This action was removed to the United States District Court for the Central District of California and then transferred to this court. Amended Compl. ¶ 12. In August of 2001, this court conditionally certified the following class: "All persons and entities who, through the date of class certification, are franchisees of Defendant GNC Franchising Inc., with franchises presently operating and situated anywhere in the United States." Amended Compl. ¶ 14. As a condition of the settlement, GNC agreed to: (1) "take reasonable measures to avoid setting the ultimate discounted retail price on sale items advertised in the Let's Live Overwrap below the franchisee's wholesale price for that item;" Amended Compl. ¶ 15; (2) accept no royalty on items sold through the Let's Live Overwrap with an advertised discounted retail price that results in a lower price than a franchisee's then-current wholesale price; Amended Compl. ¶ 16; (3) "reaffirm in writing

its policy not to prevent or interfere with vendor sales directly to franchisees" and that "in furtherance of its commitment, [GNC] agree[d] to immediately advise, by means of a letter to all third party vendors, that they are free to sell directly to all Franchisees without adverse consequences from [GNC]." Amended Compl. ¶ 23.

Plaintiffs allege that defendant has violated the 2001 Agreement by: (1) selling items at below the franchisees wholesale price through the Let's Live Overwrap, other promotions and the introduction of a sales catalogue; (2) collecting royalties on these items; (3) threatening and harassing vendors for dealing directly with franchisees; and (4) by refusing to approve third party vendors. Plaintiffs also allege that defendant's conduct constitutes tortious interference with their contractual relations with their vendors.

II.     STANDARD OF REVIEW

When the court considers a Rule 12(b)(6) motion to dismiss, the issue is not whether plaintiff will prevail in the end, or whether recovery appears to be unlikely or even remote. The issue is limited to whether, when viewed in the light most favorable to plaintiff, and with all well-pleaded factual allegations taken as true, the complaint states any valid claim

for relief. In this regard, the court will not dismiss a claim merely because the factual allegations do not support the particular legal theory advanced. Rather, the court is under a duty to independently examine the complaint to determine if the factual allegations set forth could provide relief under any viable legal theory. See 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 337 & n.40 (2d ed. 1990); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court is also permitted to consider any exhibits attached to the complaint as well as documents attached to the motion to dismiss, if plaintiffs' claims are based on the documents. Rosman v. Fleet Bank Nat'l Assoc. 280 F.3d 384, 388 n. 4 (3d Cir. 2002).

III.  DISCUSSION

    A.  Counts I and II - Breach of 2001 Agreement

    Defendant argues that the Class 1 plaintiffs have failed to state a claim for breach of the 2001 Agreement in Counts I and II. Defendants further argue that named plaintiff Tull, representing Class 2, lacks standing to enforce the provision of the 2001 Agreement because he was not a party to the agreement. For the reasons set forth below, the court will deny defendant's motion to dismiss the claims of Class 1 in Counts I

and II and will grant the motion to dismiss the claims of Classes 2 in Counts I and II.

    1.   Class 1 Claims in Counts I and II

Defendants argue that Class 1 plaintiffs Quadrel and Stefanou, who were class members and were bound by the 2001 Agreement, have failed to state a claim for breach of that agreement in Counts I and II. Plaintiffs Quadrel and Stefanou allege in Count I that defendant breached paragraph IX 5(d) of the 2001 Agreement. Paragraph IX 5(d) provides:

> GNC will take reasonable measures to avoid setting the ultimate discounted retail price on sale items advertised in the Let's Live Overwrap below the franchisee's wholesale price for that item. On any item sold through a Let's Live Overwrap promotion with an advertised discounted retail price lower than the franchisee's then-current wholesale price, no royalty will be payable on the sale of that item during the applicable Let's Live sale period. Appropriate adjustments for royalties paid in such cases will be made by means of a product credit for all applicable confirmed sales.

2001 Agreement, Exhibit 1 to Amended Complaint at paragraph IX 5(d).

The Class 1 plaintiffs, who defendants concede have standing to pursue a claim for breach of the 2001 Agreement, contend that defendants have violated paragraph IX 5(d) as follows: (1) defendant has sold items through the Let's Live Overwrap for a price which is below the franchisee's wholesale price and has collected royalties on these items; Amended Compl.

at ¶¶ 17, 20; (2) defendant has sold items for a price which is below a franchisee's wholesale price in advertisements other than the Let's Live Overwrap; Amended Compl. at ¶ 18; (3) defendant has sold items for a price which is below a franchisee's wholesale price through its sales catalogue; Amended Compl. at ¶ 19; (4) defendant has sold items through a "Buy One Get One" promotion which has resulted in "a financial loss to the franchisees on the second bottle of product sold"; Amended Compl. at ¶ 20.

The Class 1 plaintiffs allege in Count II that defendant violated paragraph IX 5(e) of the 2001 Agreement. paragraph IX 5(e) provides:

> Franchising will reaffirm in writing its policy not to prevent or interfere with vendor sales directly to Franchisees. In furtherance of its commitment, Franchising agrees to immediately advise, by means of a letter to all third party vendors, that they are free to sell directly to all Franchisees without adverse consequences from Franchising or GNC.

2001 Agreement, Exhibit 1 to Amended Complaint at paragraph IX 5(d).

The Class 1 plaintiffs allege that defendant has violated paragraph IX 5(e) by: (1) interfering with vendors ability to sell directly to GNC franchisees; Amended Compl. ¶ 53(a); (2) threatening adverse consequences to vendors that attempt to deal directly with franchisees; Amended Compl. ¶¶ 24, 53(b); and (3)

withholding approval of vendors which wish to deal directly with franchisees;  Amended Compl. ¶¶ 25, 26, 53(c).

At this juncture of the litigation, these allegations are sufficient to withstand a motion to dismiss.  Accordingly, the motion is denied without prejudice to defendant's right to raise these arguments on a more developed record.

       2.   Class 2 Claims in Counts I and II

Defendants contend that Class 2 plaintiff Scott Tull, who opted out of the 2001 Agreement, lacks standing to enforce the 2001 Agreement on behalf of himself or a putative class of similarly situated franchisees.  Plaintiffs concede that these plaintiff Tull was not a party to the 2001 Agreement.  Plaintiffs contend, however, that plaintiff Tull does have standing to seek class wide relief on behalf of those similarly situated because they are the intended beneficiaries of the 2001 settlement agreement.  Thus, plaintiffs contend, pursuant to Rule 71, they can seek enforcement of the 2001 Agreement.

In <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 750 (1975), the Supreme Court held that "a consent decree is not enforceable directly or in a collateral proceeding by those who are not parties to it even though they were intended to be benefitted by it." <u>Id</u>.  In seeming contradiction, in <u>Washington Hospital v. John F. White, Jr.</u>, 889 F.2d 1294 (3d Cir. 1989), the

8

court of appeals held that a third party beneficiary to a stipulation, which the court of appeals likened to a consent decree, had standing to enforce the stipulation. Id. at __. The court of appeals did not mention Blue Chip Stamps, but rather relied on Fed.R.Civ.P. 71. Recently, in Antonelli v. State of New Jersey, 419 F.3d 267, 273 (3d Cir. 2005), the court of appeals noted that non-parties did not have standing to enforce a consent decree unless they are intended beneficiaries of the consent decree and the decree itself contemplates enforcement by non-parties. Id. The court of appeals suggested that this inquiry requires examination of the order itself. Id.(citing Cicirello v. N.Y. Tel. Co., 123 F.R.D. 523, 526 (E.D. Pa. 1989) for the proposition that "it is necessary to look to the consent decree itself to see whether it contemplates enforcement by non-parties").

Accordingly, the court has examined the 2001 Agreement and the Final Judgment and Order of Dismissal with Prejudice ("Stipulation") entered in Duarte et. al v. GNC Franchising, Inc., Civil Action N. 00-332 (Lancaster, J.) to determine whether it contemplates enforcement by Class 2 plaintiffs. With regard to plaintiff Tull, and the class he purports to represent, it appears clear that by excluding themselves from the class they have relinquished the right to enforcement the 2001 Agreement.

Specifically, at paragraph 3 of the Stipulation it provides: "[t]he class members who have filed timely and valid requests for exclusion (and who are therefore not Class Members) are not bound by this Final Judgment...All Class Members who, through the date of preliminary certification, are or were franchisees of [defendant] with franchises operating and situated anywhere in the United States as of that date, are bound by this Final Judgment and by the Settlement...." Further, at paragraph 11, the Stipulation provides that "[m]embers of the class who have validly and timely requested exclusion may pursue their own individual remedies, if any." In addition, the class is similarly defined in the 2001 Agreement. It therefore appears clear from the Stipulation itself that the plaintiffs who opted out were not bound by the Stipulation nor may they seek to enforce it. Accordingly, the Class 2 plaintiffs lack standing to seek relief in Counts I and II their claims will be dismissed. See also <u>Hopkins v. GNC Franchising, Inc.</u>, 2006 WL 2266253, *2 (W.D. Pa. Jan. 13, 2006)(Schwab, J.).

       B. Count III - Tortious Interference

    Class 1 and 2 plaintiffs allege in Count III that defendant has tortiously interfered with their contractual relations with their vendors. Defendant moves to dismiss this count on the basis that: (1) Count III is barred by the "gist

10

of the action" doctrine; and (2) plaintiffs have failed to state a cause of action for tortious interference with contractual relations. For the reasons set forth below, the court will grant defendant's motion to dismiss the claims of Class 1 plaintiffs in Count III and will deny defendant's motion to dismiss the claims of Class 2 plaintiffs in Count III, without prejudice to defendant's right to raise these issues on a more developed factual record.

    1. Class 1 Claims in Count III

As noted above, the Class 1 plaintiffs have standing to allege in Counts I and II that defendant breached the 2001 Agreement. Pursuant to the "gist of the action" doctrine, the claims of Class 1 plaintiffs in Count III must be dismissed.

The "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims by precluding plaintiffs from recasting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa.Super. 2002)[3]. The doctrine is based on the rationale that

---

[3] The Pennsylvania Supreme Court has not, as of yet, recognized the "gist of the action doctrine." The Court of Appeals for the Third Circuit, however, in an unpublished decision has stated that "we predict that the state supreme court would adopt the doctrine as set out in the Superior Court's cases." Williams v. Hilton Group, PLC, 93 Fed.Appx. 384, 385 (3d Cir. 2004).

"tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." Id.

The claims the Class 1 plaintiffs have asserted in Count III essentially restate their contract claims in Count II. The Class 1 plaintiffs effectively concede this point in the last sentence of paragraph 62 of the Amended Complaint, wherein they allege that defendant's conduct "had the purpose of cementing GNC's ability to extract additional profits from their franchisees in the form of unnecessary distribution mark up fee [sic], and also, violated the terms of paragraph IX 5(e)" of the 2001 Agreement. Amended Compl. ¶ 62. The Class 1 plaintiffs cannot, through artful pleading or otherwise, convert these contract claims into tort claims. Accordingly, the claims of Class 1 plaintiffs in Count III will be dismissed.

2.  Class 2 Claims in Count III

Defendants contend that the claims of Class 2 plaintiffs in Count III should also be dismissed based upon the "gist of the action" doctrine. Defendants further contend that these claims should be dismissed for failure to state a claim.

12

While defendant's maintain that Class 2 plaintiffs lack standing to enforce the 2001 Agreement, they nonetheless argue that the parties relationship is governed solely by contract, namely, the franchise agreement. Defendant attached plaintiff Quadrel's franchise agreement to its reply brief in support of its motion to dismiss. [Exhibit 1 to Doc. 20]. Defendant contends, relying on Rosman v. Fleet Bank Nat'l Assoc. 280 F.3d 384, 388 n. 4 (3d Cir. 2002), that this document is properly before the court under Fed.R.Civ.P. 12(b)(6) because "it is a document upon which plaintiffs' claims are based." Defendant's Reply Brief in Support of its Motion to Dismiss Plaintiffs' Amended Class Action Complaint, doc. 20, at page 5, footnote 2. The court disagrees.

While the document defendant attached to its reply brief is unquestionably the Franchise Agreement between plaintiff Quadrel and defendant, there is no evidence of record as to whether this was the Franchise Agreement entered into by Class 2 plaintiff Tull. Accordingly, it cannot be properly said that this is the document upon which they relied for their claims in Count III. Rather, the franchise agreements of Class 2 plaintiffs may provide a defense to their claims in Count III.

Defendant also contends that Count III should be dismissed for failure to state a claim. Specifically, defendant contends that plaintiffs have failed to plead an existing or prospective contract they interfered with. Plaintiffs have alleged sufficient facts in Count III to state a claim for tortious interference.

Thus, defendant's motion to dismiss the claims of the Class 2 plaintiffs in Count III is denied, without prejudice.

### C. Punitive Damages and Attorneys' Fees

Defendant contends that this is a non-representative contract action and, thus, punitive damages and attorneys' fees are not available. Plaintiffs correctly point out that, at this juncture, they have a viable tort claim in Count III, for which punitive damages are available. Plaintiffs further note that Fed.R.Civ.P. 23(h) provides that "[i]n an action certified as a class action, the court may award attorney fees..." Fed.R.Civ.P. 23(h). Accordingly, defendant's motion to dismiss the Class 1 plaintiffs' claims for punitive damages is granted. Defendant's motion to dismiss the Class 2 plaintiffs' claims for punitive damages is denied without prejudice. Finally, defendant's motion to dismiss plaintiffs' request for attorneys' fees is also denied without prejudice.

IV.     CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is granted in part and denied in part.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LESLIE QUADREL, NICHOLAS )
STEFANOU, SCOTT TULL, )
DAVID ADAMS and CHRIS )
GREGORY, on behalf )
of themselves )
and those similarly )
situated, )
    Plaintiffs, )
     )
    v. )  Civil Action No. 06-643
     )
GNC FRANCHISING, L.L.C. )
    Defendant. )

ORDER

AND NOW, this 21ST day of December, 2006 upon consideration of defendant's motion to dismiss [doc. No. 12] IT IS HEREBY ORDERED THAT the motion is GRANTED in part and DENIED in part as follows: defendant's motion to dismiss the claims of the "Class 2" plaintiffs in Counts I and II is GRANTED and these claims are DISMISSED; defendant's motion to dismiss the claims of the "Class 1" plaintiffs in Count III is also GRANTED and these claims DISMISSED; by virtue of plaintiff Gregory's motion to dismiss himself without prejudice the claims of "Class 3" plaintiffs are DISMISSED without prejudice; the remainder of defendant's motion to dismiss is DENIED, without prejudice to defendant's right to raise these issues on a fully developed record.

BY THE COURT,

*[signature]*