IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LESLIE QUADREL, NICHOLAS )
STEFANOU, SCOTT TULL, )
DAVID ADAMS and CHRIS )
GREGORY, )
on behalf of themselves )
and those similarly situated )
)
     Plaintiffs, )
)
  v. ) Civil Action No. 06-0643
)
GNC FRANCHISING, L.L.C., )
)
     Defendant. )

Gary L. Lancaster,
District Judge.
November 29, 2007

## MEMORANDUM and ORDER

This is a putative class action alleging breach of a prior class action settlement agreement and tortious interference with contractual relations. Before the court is plaintiffs' motion for class certification.

On March 30, 2007, the court held a class certification hearing. Thereafter, on May 23, 2007, the parties submitted separate proposed findings of fact and conclusions of law, to which the other side either admitted or denied. [Doc. No. 51](hereinafter "Plaintiffs' Findings" or "Defendant's Findings"). For the reasons set forth below, the court will grant plaintiffs' motion for class certification in part and deny it in part.

1

I. Class Description

Plaintiffs seek to certify a class ("Class 1") comprised of former and current GNC franchisees who participated in a prior class action settlement agreement approved by this court in 2001 (hereinafter "2001 Settlement Agreement"). Plaintiffs further seek to certify a class ("Class 2") comprised of former and current GNC franchisees who did not participate in the 2001 Settlement Agreement but, rather, opted out[1].

II. Background

A. Factual Background

Unless otherwise specified, the following facts have been admitted. Named plaintiffs Nicholas Stefanou, Leslie Quadrel and Scott Tull are GNC franchisees. Plaintiff's Findings at paragraphs 1-3. In 1999, franchisees of GNC filed a class action complaint against defendant in the Superior Court of the State of California. Amended Compl. ¶¶ 11-12. This action was removed to the United States District Court for the Central

---

[1] Plaintiffs originally brought claims for tortious interference with contractual relations on behalf of franchisees who obtained their franchises after 2001 and who were, therefore, not members of the 2001 class. Plaintiff Chris Gregory was the only representative of Class 3. Plaintiff Gregory asked this court to dismiss his claims without prejudice. Thus, by order dated December 16, 2006, this court also dismissed the claims of the class he purported to represent, without prejudice.

District of California and then transferred to this court. Amended Compl. ¶ 12. In August of 2001, this court conditionally certified the following class: "All persons and entities who, through the date of class certification, are franchisees of Defendant GNC Franchising Inc., with franchises presently operating and situated anywhere in the United States." Amended Compl. ¶ 14. As a condition of the settlement, GNC agreed to: (1) "take reasonable measures to avoid setting the ultimate discounted retail price on sale items advertised in the Let's Live Overwrap below the franchisee's wholesale price for that item;" Amended Compl. ¶ 15; (2) accept no royalty on items sold through the Let's Live Overwrap with an advertised discounted retail price that results in a lower price than a franchisee's then-current wholesale price; Amended Compl. ¶ 16; (3) "reaffirm in writing its policy not to prevent or interfere with vendor sales directly to franchisees" and that "in furtherance of its commitment, [GNC] agree[d] to immediately advise, by means of a letter to all third party vendors, that they are free to sell directly to all Franchisees without adverse consequences from [GNC]." Amended Compl. ¶ 23. This court retained jurisdiction over the administration and enforcement of the 2001 Agreement. Plaintiffs' Findings at paragraph 34.

Plaintiffs state that 2,316 franchisees were given notice of the 2001 Settlement Agreement. Plaintiff's Findings at paragraph 23. Defendant disputes this number, on the basis that

"it is an unauthenticated list of names and addresses..." Plaintiffs' Findings at paragraph 23. Defendant has not, however, offered any specific evidence to contradict this list. Plaintiffs further state that over 1,800 franchisees participated in the 2001 Settlement Agreement. Plaintiffs' Findings at paragraph 24. Defendant disputes this assertion. Id. Defendant has not, however, offered any specific evidence to contradict this finding. Id. Plaintiffs do not have personal knowledge of the number of class members. Defendant's Findings at paragraphs 1-3.

Plaintiffs allege, on behalf of Class 1, that defendant has violated paragraph IX.5(d) of the 2001 Agreement, which required defendant to take reasonable measures to avoid setting items for sale that resulted in an ultimate sale price to franchisees below their wholesale cost. Plaintiffs' Findings at paragraph 5. Plaintiffs Quadrel and Stefanou have sold items advertised for sale by defendant such that the ultimate sale price of the items was below their wholesale cost for those items. Plaintiffs' Findings at paragraph 8. Plaintiffs Quadrel and Stefanou did not receive a royalty credit for these items. Plaintiffs' Findings at paragraph 10.

Plaintiffs also allege, on behalf of Class 1, that defendant violated paragraph IX5.(e) of the 2001 Agreement which required defendant to reaffirm their policy not to prevent or

4

interfere with vendor sales directly to franchisees and to advise all third party vendors, in writing, of their policy. Plaintiffs' Findings at paragraph 11. Plaintiffs allege, and defendant denies, that defendant initiated a change to its Direct Purchase ("DP") vendor policy which required vendors to sell their products through defendant's distribution mechanism, Nutrimarket. Plaintiffs' Findings at paragraph 12. DP products are products that are purchased by franchisees outside defendant's system through approved independent distributors or vendors to meet locally relevant customer demand. Defendant's Findings at paragraph 9.

Plaintiffs also contend that defendant instituted a change to its DP vendor policy in 2006, which required approval of all DP vendor products sold by franchisees. Plaintiffs' Findings at paragraphs 15-16. Defendant maintains that approval of DP vendor products has always been required. Id. See also Defendant's Findings at paragraph 25. Defendant concedes that some of the vendors and products which defendant has disapproved of under the 2006 DP vendor policy are vendors and products that franchisees have been selling successfully for years. Plaintiffs' Findings at paragraph 19. Defendant further concedes that it has sent letters to franchisees denying product approval on the basis that the product "competes or conflicts with a GNC product." Plaintiffs' Findings at paragraph 20. Defendant's DP

5

vendor policies apply to all franchisees. Plaintiffs' Findings at paragraph 26. Plaintiffs argue that these changes to defendant's DP vendor policy, which allowed defendant to disapprove vendors, constituted a violation of paragraph IX5.(e) of the 2001 Agreement.

Plaintiffs also allege, on behalf of Class 2, that defendant's conduct constitutes tortious interference with their contractual relations with their vendors. Plaintiffs' Findings at paragraph 22.

B. Procedural Background

Plaintiffs originally filed a three (3) count complaint. In Count I plaintiffs allege, on behalf of Class 1, that defendant violated Section IX 5(d) the 2001 Settlement Agreement by selling items below the franchisees wholesale price and collecting royalties on these items. In Count II plaintiffs allege, also on behalf of Class 1, that defendant violated Section IX 5(e) of the 2001 Settlement Agreement by preventing or interfering with vendor sales directly to franchisees. In Count III plaintiffs allege, on behalf of Class 2, that defendant tortiously interfered with Class 2 franchisees' contractual relations with third party vendors.

By order dated November 11, 2006, named plaintiffs David Gregory and Chris Adams, purporting to represent Classes 1 and 3, respectively, were dismissed from the action, without

6

prejudice. After the class certification motion was filed, on May 23, 2007, named representative Scott Tull, the sole representative of Class 2, was dismissed from the action without prejudice. Thereafter, on July 5, 2007, named representative Leslie Quadrel, one of the two (2) representatives of Class 1, moved to dismiss her claims, with prejudice. By order dated July 9, 2007, this court granted Ms. Quadrel's motion and dismissed her claims with prejudice. Accordingly, only plaintiff Nicholas Stefanou, representing Class 1, remains in the action.

III. STANDARD OF REVIEW

It is plaintiffs' burden to prove that this action satisfies all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001). Rule 23(a) provides that a class may only be certified if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

Here, plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) provides that certification is proper if the court finds that "questions of law or fact common to the

7

members of the class predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

Although a class certification decision requires a thorough examination of the factual and legal allegations, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 178 (1974)(citation omitted).

IV. DISCUSSION

A. Class 2

Defendant argues that, after Mr. Tull was dismissed from this matter, there is no plaintiff with standing to bring claims on behalf of Class 2. Defendant contends, therefore, that the claims of Class 2 must be dismissed as moot. Plaintiffs argue, however, that since Mr. Tull was dismissed after plaintiffs filed a motion for class certification, the claims of Class 2 remain. For the reasons set forth below, the court agrees with defendant and will deny plaintiffs' motion for certification of the Class 2 claims as moot.

In Lusardi v. Xerox Corp., 975 F.2d 964 (3d Cir. 1992),

the court of appeals extensively examined the parameters of the "case or controversy" requirement of Article III, Section 2 of the United States Constitution in the context of class action litigation. In Lusardi, the named representatives filed a class action against Xerox Corporation alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et. seq, ("ADEA"). After a procedural history that can only fairly be described as tortuous, a conditionally certified class was decertified. Thereafter, the plaintiffs entered into a Memorandum of Understanding with Xerox by which they agreed to settle their individual claims against Xerox while still reserving their right to pursue class claims. Id. at 968. The court then dismissed the claims of the individual plaintiffs. The plaintiffs moved for class certification. The court denied class certification on the basis that, inter alia, "there no longer remains a 'live case or controversy' within the meaning of Article III of the Constitution." Id. at 969. The plaintiffs appealed.

The court of appeals affirmed the district court. The court of appeals first noted that, under Article III, Section 2 to the United States Constitution, "the federal judicial power extends only to 'Cases' or 'Controversies.'" Lusardi 957 F.2d at 974. The court of appeals explained that "[a]rticle III requires that a plaintiff's claim be live not just when he first brings

the suit but throughout the entire litigation, and once the controversy ceases to exist the court must dismiss the case for lack of jurisdiction." Id. (citations omitted). Accordingly, "[s]ettlement of a plaintiff's claim moots an action." Id.

This general rule, the court of appeals opined, is subject to a narrow exception in class actions. "Once a class has been certified, mooting of the class representative's claims does not moot the entire action because the class acquires a legal status separate from the interest asserted by its named plaintiff." Lusaridi, 975 F.3d at 974. (citation and internal quotation omitted). However, "[a] different general rule operates when a class has yet to be certified." Id. The court of appeals held that, "when claims of the named plaintiffs become moot before class certification, dismissal of the action is required." Id. (citations omitted).

In Weis v. Regal Collections, 385 F.3d 337 (3d Cir. 2004), the court of appeals addressed the issue of whether a defendant's offer of judgment, pursuant to Fed.R.Civ.P. 68, prior to class certification renders a representative plaintiff's class claims moot. The court of appeals held that "[a]bsent undue delay in filing a motion for class certification...where a defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification

motion back to the filing of the class complaint." Weis, 385 F.3d at 348. The court of appeals specifically noted that "[d]efendants here used the Rule 68 offer to thwart the putative class action before the certification question could be decided." Id. at 349. The court of appeals distinguished Lusardi on the basis that the Lusardi plaintiffs' claims had been voluntarily settled. Id. The court of appeals stated that, in Lusardi, "after the named plaintiff's claims had been voluntarily settled, they no longer had justiciable claims when they moved for class certification." Id.

Plaintiffs attempt to distinguish this case from Lusardi on the basis that plaintiff Tull had live claims at the time the class certification motion was filed. Plaintiffs argue that, unlike the plaintiffs in Lusardi, plaintiff Tull participated in extensive discovery and briefing of the class issues. Plaintiff further argues that this case falls within the ambit of Weis, and that defendant used settlement of the claims against Mr. Tull in an unrelated New Jersey action to coerce him into dismissing his claims here.

Defendant may very well have used a settlement in an unrelated case to negotiate the withdrawal of the Class 2 claims here. The fact remains, however, that Mr. Tull and Ms. Quadrel, and Mr. Gregory and Mr. Adams before them, voluntarily withdrew their claims. They did not, at any time, distinguish between

11

their class claims and their individual claims. Rather, they sought to be dismissed from the action, Ms. Quadrel with prejudice. Accordingly, at this juncture, there is no justiciable controversy and the motion to certify the Class 2 claims will be denied as moot.

Set forth below is a Rule 23 analysis of the Class 1 claims in Counts I and II.

B. Class 2

1. Rule 23(a)

The court of appeals has noted that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." In Re Community Bank of Northern Virginia, 418 F.3d 277, 302 (3d Cir. 2005)(citation omitted). In order for a class to be certifiable under Rule 23(a), it must meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Id. If the court finds that the proposed class satisfies the four requirements of Rule 23(a), the court must determine whether the class fits within one of the categories set forth in Rule 23(b). Id. Here, the parties seek certification pursuant to Rule 23(b)(3). Rule 23(b)(3) requires the court to examine whether common questions of law or fact predominate and

whether "the class action mechanism is the superior method for adjudicating the case." Id.

  a. Numerosity

Here, plaintiff has established that 2,316 franchises were notified of the 2001 settlement and 491 opted out, thus indicating that there are approximately 1,800 potential class members. The court of appeals has held that "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-227 (3d Cir. 2001). Accordingly, plaintiff has established that the class is sufficiently numerous.

  b. Commonality and Typicality

As the court of appeals has opined "[t]he concepts of commonality and typicality are broadly defined and tend to merge." In Re Community Bank of Northern Virginia, 418 F.3d at 303. Further, "[c]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." Id.(citation and internal quotation omitted).

In Counts I and II, plaintiffs allege that defendant violated the 2001 Settlement Agreement in a number of ways.

13

Although defendant insists that factual variations among the franchisees, such as which products they purchased from differing third party vendors, render the plaintiffs claims atypical, plaintiffs have identified a number of issues related to whether defendant's conduct violated the 2001 Settlement Agreement. Among the issues common to the class are: (1) the interpretation of the 2001 Settlement Agreement; (2) whether items were sold below franchisee's wholesale cost in the "Let's Live" overwrap and via other sales publications and whether this violates the 2001 Settlement Agreement; (3) whether franchisees were entitled to royalty credit on these items; and (4) whether the franchisees were damaged by defendant's conduct.

Thus, plaintiff is challenging the same conduct on behalf of himself and the putative class. This is sufficient to satisfy plaintiff's burden to establish commonality and typicality.

c. Adequacy

The court of appeals has held that the Rule 23(a)(4) requirement of adequacy of representation actually encompasses two distinct inquiries designed to protect the interests of absent class members. In Re Community Bank of Northern Virginia, 418 F.3d at 303. Specifically, "it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to

14

represent the class." Id. (citation and internal quotation omitted). As noted above, plaintiff's claims are typical of the class and there is no apparent conflict of interest. Further, plaintiff's counsel are well known to the court as experienced and zealous consumer class action advocates. Accordingly, the court finds that the adequacy of representation requirement of Rule 23(a)(4) has been met.

2. Rule 23(b)(3)

As set forth above, the parties seek certification pursuant to Rule 23(b)(3). Rule 23(b)(3) requires the court to examine whether common questions of law or fact predominate and whether "the class action mechanism is the superior method for adjudicating the case." In Re Community Bank of Northern Virginia, 418 F.3d at 303.

a. Predominance

"The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." Id. at 308-09(citation omitted). Thus, "[i]n this vein, a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be 'typical [of] claims or defenses of the class.'" (Id. quoting Amchem, 521 U.S. at 623 n. 18). As noted above, the claims all arise from the substantially similar factual predicate. Thus, the court finds that the Rule 23(b)(3)

requirement that "questions of law or fact common to the members of the class predominate over any questions involving individual class members" has been satisfied. Fed.R.Civ.P. 23(b)(3).

   b. <u>Superiority</u>

Rule 23(b)(3) lists the following factors as relevant to the question of whether a class action is superior to other forms of litigation, including:

> (A) the interest of members of the class is individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Fed.R.Civ.P. 23(b)(3).

The superiority inquiry requires this court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." <u>In Re Community Bank of Northern Virginia</u>, 418 F.3d at 309. (citations and internal quotations omitted).

There is no indication that there have been other cases filed by class members challenging defendant's conduct. Thus, it seems unlikely that individual members of the class wish to control the prosecution of this case. In addition, the 2001 Settlement Agreement was approved by this court, making this the appropriate forum. Further, there do not appear to be any

16

insurmountable difficulties in managing this case as a class action. Accordingly, this court finds that "the class action mechanism is the superior method for adjudicating the case," and the Rule 23(b)(3) superiority requirement has been met.

V. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Class Certification [Doc. No. 39] will be granted in part and denied in part. The appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LESLIE QUADREL, NICHOLAS )
STEFANOU, SCOTT TULL, )
DAVID ADAMS and CHRIS )
GREGORY, )
on behalf of themselves )
and those similarly situated )
)
     Plaintiffs, )
)
v. ) Civil Action No. 06-0643
)
GNC FRANCHISING, L.L.C., )
)
     Defendant. )


O R D E R

Therefore, this **29** day of November, 2007, IT IS HEREBY ORDERED that the Motion for Class Certification [Doc. No. 39] is GRANTED in part and DENIED in part as follows:

1. Class Certification. Civil Action No. 06-0643, styled <u>Nicholas Stefanou, et. al v. GNC Franchising L.L.C.</u> shall be maintained as a class action on behalf of the following class of plaintiffs:

   All present and past GNC franchisees who did not "opt out" and accepted the terms of the Class Action Stipulation of Settlement dated August 3, 2001 ("2001 Settlement Agreement").

   With respect to the following causes of action:

   Any claims for damages or injunctive relief asserted in Count I alleging defendant violated Section IX 5(d) of the 2001 Settlement Agreement and any claims for damages or injunctive relief asserted in Count II

alleging defendant violated Section IX 5 (e) of the 2001 Settlement Agreement.

2. Class Representative and Class Counsel: Nicholas Stefanou is designated as class representative and Riley, Hewitt, Witte & Romano, P.C. and William J. Witte and Sandra L. Alven are designated as Class Counsel.

3. Notice: The parties are directed to submit a joint proposed notice plan within twenty (20) days of the date of this order. The notice plan must satisfy the requirements of Fed.R.Civ.P. 23(c)(2).

Upon receipt of the parties notice plan, the court will enter an order directing notice to be prepared and disseminated and setting the date by which class members must opt-out of the class.

IT IS HEREBY FURTHER ORDERED THAT Plaintiffs' Motion for Class Certification of the Class 2 claims asserted in Count III is DENIED as MOOT.

BY THE COURT:

_____, J.

cc: All Counsel of Record